Good morning, Your Honors, and may it please the Court. I'm Thomas Burns, and I represent Ms. Stamper. In preparing for oral argument, I came to the conclusion that the D.C. Circuit got it right in Doherty v. Berry. I am persuaded that that's the correct result, and I can agree with Judge Ruth Bader. It's not so hard to do that. It's a persuasive ruling. I think it undermines the argument that I made about the administrative law argument, and if you care to hear some of the reasons why, I can give those to you. All of us who have had appellate arguments realize that sometimes in the cold light of preparation for oral argument, things seem differently than they did before. We appreciate you sharing that. Sure. So the issue before the Court is equitable tolling, and our position is that the district judge overlooked some disputes of fact that prevented it from granting summary judgment to the school board, and the place I'd like to start is with the standard of review, and our position is this is arising from summary judgment, and so therefore it's a de novo standard of review where you're trying to obviously get the law right and identify if there are disputes of fact. The school board implies that it's a—either states or implies that it's a clear error standard of review, which to me is akin to like the mixed standard of review when we're doing a suppression hearing or a Franks hearing in criminal law where you're obviously trying to get the law right, but then you have either a stipulated record or an evidentiary hearing, and then the judge is making factual determinations, but that can't happen— Let me make sure I get this right. So at her deposition, she testified that she received the notice of the right to sue letter from the Commission. She read the letter. She called an attorney, Klein. She understood she had four years to file in 90—in state court and 90 days in federal court. She had a driver's license and owned a car during the 90-day period. On February 25, 2009, just before the 90-day period began, she drove herself to a doctor's appointment, right? In the medical record for that visit, the doctor checked the box for orientation to time, place, person. She saw the doctor again on June 3, 2009, just after the 90-day period ended, and again drove herself to the appointment. He again checked the box for orientation to time, place, person. She also saw her psychiatrist on April 6 during the limitation period, drove herself to this appointment. Psychiatrist said she was oriented, unannoyed. Those are very problematic facts for my client, but our position is a fact finder could read these things differently because the fact that you couldn't drive to a car somewhere— What about this creates a genuine issue of material fact about causation that any mental problem caused her failure to file a timely complaint? Exactly, and that is the issue. Our point is that these are different things. The fact that you're oriented to where you are doesn't mean that you're capable of filing a complaint. What evidence creates a genuine issue of material fact about causation? The conditions that she was diagnosed with, the medications that she was on, much later on in the period, she's still unable in the district court to really adequately litigate her claims so you could draw a reasonable inference, well, she's still suffering from these problems. What I saw was that she was diagnosed five years before she started teaching, correct? Correct. So she had the condition five years before she started teaching. She taught for what, eight years? I think that's right. With the condition, she was able to file her charge with the EEOC and she claimed her condition worsened, but the only thing that I saw was that she couldn't pull or push. And then the drugs that she was taking were basically antidepressants and all the things that she was able to do for those 13 years with that condition and file a charge, she couldn't file the lawsuit. Right. Again, these are problematic facts for us. I think if you were, and this didn't happen because the district judge didn't do it, but if you were to give these medical records to an expert witness and say, well, what's going on with this woman? I think that expert could testify, although I'm not sure that they would, but they could testify, look, she has these conditions, I'm familiar with these conditions and these medications and somebody who's dealing with this stuff really can't litigate. Tell me this, so we're talking about a 90-day period in 2009. What is there in this record to suggest, though, that she had to wait until 2013? Right. I break it up into three periods of time. The first period is February 26, 2009 when she gets the right to sue letter and up to that point, we're asking you there to say, well, there's a dispute of fact based on these medical records to at least hold it to that point. And the second point is a more problematic area, that's August 24 through December 15, 2011. December 15, 2011 is when the EEOC issues its notice of revocation, and our point is at that point, well, she's confused by what the EEOC has done, and so because she's been misled by this document that suggests that she has additional time, the time period should be told after that period. And then the final, then you have December 15 through... For how long? When does the cloud of confusion lift? It doesn't lift until she gets the right to sue letter, which occurs, well, she submits her... That the EEOC can't do according to the D.C. Circuit. Exactly. And create equitable tolling, and it accomplishes the same end by that? Well, I guess that's one way of putting it, but the point is she's a pro se litigant and she's been confused, I think, by a document that the EEOC has. I know there's an opinion by Judge, it's not cited here, but there's an opinion by Judge that the district judge had said, oh, I'm dismissing this without prejudice, and then Judge Posner said, oh, well, a pro se litigant's entitled to rely on that for purposes of the three strikes PLRA rule. So this was after the 90-day period had already expired? Oh, well after, yes. My argument is it's continuous, it has to be, that it's continuously told until she... But she wasn't confused during the 90-day period, was she? She wasn't led in any way to think that she would... She had the letter that told her she could sue. Right. But the district judge acknowledged that she was suffering from these conditions during that period of time, and our point is not that she's entitled to equitable tolling as a matter of law, but rather they're just disputes of fact that need to go to a fact finder. And so the evidence there, it's certainly sufficient to support a ruling if you had some kind of bench trial or stipulated record, like, well, I've looked at this evidence, and I conclude it's not sufficient to establish equitable tolling. I wouldn't be able to present that argument here. It's sufficient. But our point is simply that there's a dispute of fact that's preventing the entry of summary judgment. And then, I'm sorry, you were asking about taking it all the way to 2013. So she files her second amended EEOC charge July 25, 2012. So we're saying it's still being tolled at that point because she's acting based on the notice of revocation. And then she gets the second right to sue November 5, 2012. So at that point, she thinks, oh, I've got another 90 days, and then she timely files within that period. So that's our argument. It's a simple procedural error on applying the summary judgment standard regarding a dispute of fact. There's then a question about what would be the appellate remedy here. In my reply brief, I said, well, this needs to go to a jury because equitable tolling is a jury issue. But in preparing for oral argument, I started looking at that argument or that issue, and I think I'm actually incorrect. I don't think equitable tolling is a question that should be presented to a jury. I think it's a question that should be presented to a judge. So the relief that we're asking you to grant here is to vacate the judgment, remand it to the district court with instructions either to do a bench trial or to decide this on a stipulated record. At that point, assuming my client were not to prevail, it would be kicked back up here. The standard of review would properly be the mixed standard of review you'd apply in a suppression hearing or a Franks hearing where you're looking at the law and then reviewing the factual findings for a clear error. If the judge were to say— But you think we should decide as a matter of law on this record that the limitations period was equitably tolled? No, I'm not. I'm totally asking you to find that there's a dispute of fact, whether it's equitably tolled and asking the judge to perform the—it's evidentiary. To resolve the dispute of fact? Exactly. And then if it were to come up on a second appeal, like I said, the standard of review would be a different one, and I think that would facilitate appellate review here. That, in a nutshell, is our case. So if you don't have any further questions— Thank you, Mr. Burns. Thank you. Mr. Fieser, 15 minutes or such part of it as you may need. Good morning, and may it please the Court. My name is Craig Fieser. I represent the Duval County School Board. It sounds to me like opposing counsel is sort of abandoning the whole issue that was decided on the motion to dismiss by the district court, the timeliness issue. So I'm going to assume that— We're at equitable tolling. Yeah, we're at equitable tolling. Correct, Your Honor. And one thing that I could do, I guess, to start out is to focus the Court on even just on a small part of this timeline. My theme has been we're talking about four years here. We're talking about four years from the right to sue notice to the time she finally files a lawsuit in January of 2013. Really, you could even say five years, because the last act of discrimination, she alleges, is January 2007. So it's even five years from the last time she says she was discriminated against. But you could even focus in on one window of that time period. And I think my colleague already sort of pointed this window out. In August of 2011, two years after the right to sue has already expired, she asks the EEOC to reconsider her right to sue or her disposition on the right to sue two years ago. We know from the case law that just doing that in and of itself doesn't toll the time to file your lawsuit. So even if the 90-day period had not expired at that point, which it had two years ago, she still was on the clock, so to speak. She did nothing. So we have five months that go by where she does nothing before the EEOC issues what she considers to be a confusing notice of revocation, even though it does cite to the regulation that talks about, hey, if your 90-day right to sue period has expired, you don't get a new one. That's what Doherty says. That's what all the cases that are like Doherty say. You just simply can't reinstate a right to sue notice. And even in that five months, we know she's well enough to file a lawsuit. She's asked the EEOC to reconsider. She's thought about it that much. And she's still doing nothing. And she still does nothing until January of 2013, over a year after she gets the notice of revocation. So even looking at that small window, she's time barred, and she doesn't establish equitable tolling. It is true that equitable tolling is a de novo legal determination by the court. There is a case that I cited in my brief, Justice v. United States, which is not a Title VII case, but it is an 11th Circuit case, where the court does say, pretty point blank, that factual findings by the district court are reviewed under a clearly erroneous standard of review. It really doesn't matter here, though, because here all of the evidence came from the appellant, came from Ms. Stamper, her own deposition testimony. And really, counsel suggests that you could remand back and have a bench trial, perhaps a stipulated record or something of that nature. But really, we've already pretty much done that. This is a district judge that I would argue pretty much bent over backwards allowing a pro se plaintiff to submit every single possible medical record. Everything she had to show that she was simply too sick, too incapacitated to file for four years. She presented everything. In terms of the equitable tolling, can you articulate whether you would or would not be prejudiced by that, since the record is already pretty much there? Are you saying you wouldn't be prejudiced? We absolutely would be. The issue of prejudice comes into play when you've already found a basis for equitable tolling. Here it would have to be she was so sick that she couldn't file for four years. Then if you find that basis, you can look at, okay, well, would the other side be prejudiced by it if we told this? Here, think about what the school board would have to do if ultimately it had to defend the merits of these alleged claims of discrimination and other mistreatment for Ms. Stamper. It would have to go back ten years and really pass that, because most of the acts take place assuming she would not be time barred, go back to 2005. I thought I heard you say that the record was already. The record is already there on as far as what her medical condition was during this time period. She was given every opportunity to make a record on that. Okay, so you're differentiating between her medical condition versus the allegations themselves? Versus the allegations. If you were to find that her lawsuit's timely, what would the school board have to do here? It would have to defend itself against claims that go way, way, way back. It would be unprecedented. I haven't been able to find a single appellate court that has allowed equitable tolling, at least for this amount of time period. In fact, I don't think I've seen one. What really matters, though, for purposes of equitable tolling is whether there's anything in this record to suggest that she would not have been able to file within that 90-day period. That's correct. And even in the 90-day period, and it's cited in our brief. She got a lot of evidence from her deposition alone to suggest exactly the opposite. Absolutely. There is certainly evidence that she has catatonic schizophrenia. She's had episodes. She's been on medications. You can't deny that. Right. The question is whether that prevented her from filing a timely complaint. Right. There's also doctor's visits. And for how long? And for how long. Correct, Your Honor. And there's also doctor's visits before the 90-day starts, just before, just after, and even in the middle, where she gets a pretty good prognosis. She's alert. She's attentive. She's answering questions. She's got some neck and back pain, things like that. She'd oversell. There's been all kinds of things that suggest that she would have been able to timely file, including calling a lawyer. She did call a lawyer. Absolutely. And there's enough there to say that she is, and this is her burden. This is a heavy burden that she has to show that some sort of extraordinary, rare, equitable tolling based on it, which is possible. Like I said, I haven't seen a court that's done it. And I certainly haven't seen a court that's done it for four years. But it's her burden to show that some sort of rare relief based on tolling should apply here. And there's just way too much in the record to show that she was essentially taking care of her business. She's driving herself to doctor's appointments. She's talking to doctors. She's talking to lawyers. She's living with family. She's married. She's got assistants. She's getting disability benefits. She pursued those, most likely with the help of a lawyer. So there's just way too much in the record to show, the record that essentially she created, to show that she would not be entitled to equitable tolling. And if it went back on remand to have some sort of a bench trial or to create some sort of stipulated record, there just wouldn't be anything else that could possibly show that. Even if she could show it maybe up until August of 2011, she just still wouldn't have enough to show it for another year and a half before she finally filed a lawsuit. This is just one of those cases where it's just way too much of an extraordinary window of time to toll it that I think this court should absolutely affirm on the equitable tolling issue. Thank you, Mr. Feason. Thank you, Your Honor. Mr. Burns, two minutes. I don't know that I have that much more to add. Our position is fairly straightforward. It's just that there's a fact. I understand that there are some inconvenient facts during that initial 90-day period, but we're just saying if you gave this stuff to an expert, which the district court on remand would have the ability to appoint on its own under Rule 706A, you could have this dispute of fact, and the district court could theoretically rule in our favor, and that's why we think the appropriate procedure is to remand for either an evidentiary hearing or a bench trial on a stipulated record, whatever the district court thinks is appropriate. Okay. Mr. Burns, we noticed that you are court-appointed, and I at least am doubly appreciative of that. First of all, that you'd take an appointment in a civil case, which unlike the CJA court appointments, as you well know, totally uncompensated, completely pro bono, and also it's a very difficult case. You handled it valiantly and well, and if I'd thought of my double layer of appreciation at the time I wrote the response to your letter, I might have rounded off some of the sharp edges of mine, so when you think of that letter, just remember my appreciation. I will, Your Honor. Thank you. Next case up.